

U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

**ENTERED**

TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed April 24, 2009**                                    **United States Bankruptcy Judge**

---

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| CHRISTOPHER WADE COOPER AND | § | CASE NO. 08-20473-RLJ-13 |
| RHONDA LEANN COOPER, | § | |
| | § | |
| DEBTORS | § | |

### MEMORANDUM OPINION

The debtors, Christopher and Rhonda Cooper, seek confirmation of their chapter 13 plan which "specially" classifies and pays in full two unsecured creditors, Ruben L. Hancock, P.C. (Hancock) and Happy State Bank (HSB). Walter O'Cheskey, the standing chapter 13 trustee, objects to the plan, contending that it unfairly discriminates against the debtors' other unsecured creditors.

The Court has jurisdiction over this matter under 28 U.S.C. § 1334(b); this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B). This Memorandum Opinion contains the Court's findings of fact and conclusions of law. Bankruptcy Rule 7052.

**Background**

The debtors' plan is a sixty-month plan with Hancock and HSB designated as "Special Class Creditors" and thus classified separately from other unsecured creditors. The debtors' payments under the plan to the trustee are $624 per month. From this sum, the trustee makes monthly distributions to Hancock and HSB, to certain secured creditors of the debtors, and to the IRS and the Texas Workforce Commission (which are classified as "Priority Creditors"). Hancock's claim is in the amount of $1,400; HSB's claim is in the sum of $5,292.11; the monthly payments to Hancock and HSB are $23.33 and $88.20, respectively. In addition to the trustee distributions, the plan provides for the debtors' direct payments (i.e., payments that are made by the debtors and not by the chapter 13 trustee) on their home mortgage with Countrywide Home Loans on a claim in the amount of $130,274.83, and to the Potter and Randall Counties taxing districts for ad valorem taxes. If confirmed and successfully completed, the plan will, over the five years, pay Hancock and HSB in full and bring current the debtors' home mortgage loan, car loans, and taxes. The debtors' other unsecured creditors, which are owed in excess of $37,800, receive no payments under the plan, and their claims will be discharged upon completion of the plan.

At the hearing on confirmation, the Court was advised that Hancock's claim arises from a sanction award that has been reduced to a judgment, and that HSB's claim arises from the debtors' having overdrawn their checking account at the bank. In addition, Hancock's claim has previously been determined to be a nondischargeable claim.

The debtors contend that the special classification, and hence the preferential treatment, of Hancock's claim is justified because it is a nondischargeable claim and, given the nature of the

claim, it may subject the debtors to a contempt action if it is not paid. They justify the special treatment of HSB's claim on similar grounds. They assert that HSB's claim allegedly involves a "check-kiting" scheme by the debtors and thus criminal charges may be brought against the debtors if HSB's claim is not paid. It is important to note, however, that these justifications were provided by debtors' counsel and acknowledged by counsel for HSB and Hancock, respectively. No evidence was proffered by the debtors at the confirmation hearing to support such contentions.

## Discussion

The broad question before the Court is whether the debtors' chapter 13 plan may be confirmed over the trustee's objection, given the plan's special classification and preferential treatment of the claims of Hancock and HSB. To analyze this issue, the Court will first address the applicable statutory provisions and the tests employed by the courts in determining whether a chapter 13 plan's proposed treatment of classes of creditors is unfairly discriminatory. The Court will then discuss certain cases that, given their respective facts, are potentially relevant to the instant case. Finally, the Court will analyze the instant case within the context of the statutory and case-law authority.

*A. Applicable Code Provisions and Tests Employed by the Courts*

Section 1322(b)(1) provides that a plan may "designate a class or classes of unsecured claims, as provided in section 1122 of this title, but may not discriminate unfairly against any class so designated." 11 U.S.C. § 1322(b)(1). The statute thus contains two requirements covering the classification of claims. *See In re Simmons*, 288 B.R. 737, 743 (Bankr. N.D. Tex. 2003) (Lynn, Judge Michael). First, the classification scheme must comply with section 1122 of

the Code, which requires that claims placed within a class be substantially similar to each other. § 1122(a). Courts have generally found this requirement satisfied when the claims within a class are nondischargeable claims. *See In re Simmons*, 288 B.R. at 744. Second, "the classification must not effect unfair discrimination among the classes." *Id*. at 743.

### 1. *In re Wolff* Test

The Bankruptcy Code does not define unfair discrimination. *See In re Simmons*, 288 B.R. at 744. Courts over the years have attempted to create a test to determine whether unfair discrimination results from the class designation. *See* Stephen L. Sepinuck, *Rethinking Unfair Discrimination in Chapter 13*, 74 Am. Bankr. L.J. 341, 351-360 (2000) [hereinafter Sepinuck] (identifying at least five different tests used to determine unfair discrimination). One recognized test comes from *In re Wolff*, which looked to the following four factors to determine whether discrimination was fair:

> (1) whether the discrimination has a reasonable basis; (2) whether the debtor can carry out the plan without the discrimination; (3) whether the discrimination is proposed in good faith; and (4) whether the degree of discrimination is directly related to the basis or rationale for the discrimination.

*See AMFAC Dist. Corp. v. Wolff* (*In re Wolff*), 22 B.R. 510, 512 (B.A.P. 9th Cir. 1982). Though widely adopted, this test has met with criticism in the legal community. Sepinuck, *supra* at 355-56. The criticisms have focused on the redundancy of the good faith requirement and the unpredictability of the standard. *Id*.

### 2. *In re Bird* Test

Another factor driven test emerged from *In re Bird*, which outlined eight factors to consider in determining whether the discrimination is fair:

> (1) whether the discrimination substantially enhances or is necessary to the feasibility of the plan; (2) whether the discrimination reflects chapter 7 liquidation priorities; (3) whether the discrimination is otherwise contemplated by the Code; (4) whether the creditor discriminated against will receive more under the plan than it would in a hypothetical chapter 7 liquidation; (5) if the creditors as a whole will receive more under the plan than in a hypothetical chapter 7 liquidation, will the discrimination encourage the use of chapter 13; (6) will the discrimination reduce the chances that the debtor will be forced to file bankruptcy in the future; (7) does the discrimination enhance an interest of the debtor which is otherwise protected or furthered by the Code; and (8) the extent of the discrimination.

*In re* Bird, No. 9401012, 1994 WL 738644, *4 (Bankr. D. Idaho Dec. 23, 1994); In *re Stella*, No. 05-05422-TLM, 2006 WL 2433443, *3 (Bankr. D. Idaho June 28, 2006). This test has also been criticized. *See In re Stella*, 2006 WL 2433443, at *4 (stating that the court realizes the problems associated with analyzing issues using lists of enumerated factors).

    3. *In re Bentley* Test

The Bankruptcy Appellate Panel for the First Circuit rejected an iteration of the *Wolff* test and any test that focused on the debtor's interest in determining whether the discrimination was proper. *Bentley v. Boyajian* (*In re Bentley*), 266 B.R. 229, 239 (B.A.P. 1st Cir. 2001). Rather than focus on whether discrimination was rational if it furthered the interest of the debtor, the court in *Bentley* reasoned that fair discrimination must consider the competing interests of all affected parties, specifically the debtor, the class preferred, and the class discriminated against. *Id*. In balancing the competing interests, the court looked to "the standard of fairness that is implicit in Chapter 13." *Id*. The court called this standard of fairness the baseline which must be met in order to consider the plan fair. *Id*. The baseline, the court said, comes from the principles and structure of Chapter 13. *Id*. at 240.

> When a plan prescribes different treatment for two classes but, despite the differences, offers to each class benefits and burdens that are equivalent to those it

> would receive at the baseline, then the discrimination is fair. On the other hand, when the discrimination alters the allocation of benefits and burdens to the detriment of one class, the discrimination is unfair and prohibited.

*Id*. The court then identified certain baseline principles applicable under the facts of the case: 1) the equality of distribution to unsecured creditors, 2) the nonpriority of the debt at issue there, which was student loan debt, 3) whether the contributions made by the debtor under the plan are mandatory or optional, and 4) the debtor's fresh start. The court stated that the principle of equal distribution (or, perhaps more accurately, pro-rata distribution) to unsecured creditors is one of the guiding principles of the Bankruptcy Code. *Id*. "[F]airness in Chapter 13 requires equality of distribution among nonpriority unsecured creditors." *Id*. The court then focused on the second principle which addresses whether debt specially classified is given priority under the Bankruptcy Code, and if not, whether it should be treated more favorably than other unsecured debt. *Id*. at 241. Next, the court looked to whether the plan provided for the debtor to make payments that are minimally required under the Code or payments that exceed the mandatory amount. *Id*. While the court does not directly state that a debtor who pays more than the mandatory amount under the Code may discriminate in favor of a particular class, one can infer that, under the right circumstances, such would be the case. Finally, the court stated that while the debtor's fresh start is an important principle of the Code, the Code does not provide the debtor with an absolute right to a fresh start, given that certain debts are excepted from the chapter 13 discharge. *Id*. at 242.

    4. *In re Simmons* Test

Judge Michael Lynn, U.S. Bankruptcy Judge for the Northern District of Texas, has proposed a test based on the Fifth Circuit opinion in *In re Chacon*. *See In re Simmons*, 288 B.R. 737. *In re Chacon* addressed whether a debtor could classify and treat differently co-debtor

unsecured claims. *Chacon v. Bracher* (*In re Chacon*), 202 F.3d 725, 726 (5th Cir. 1999). At the time of the *Chacon* opinion, a split among bankruptcy courts existed on whether the unfair discrimination test applied to co-debtor class designations. *Id*. This split arose because of the last clause of section 1322(b)(1) which states that the plan "may treat claims for a consumer debt of the debtor if an individual is liable on such consumer debt with the debtor differently than other unsecured claims." § 1322(b)(1). Some courts have interpreted this language to mean that co-debtor unsecured claims do not have to pass the unfair discrimination test, while other courts have held that the test still applies. *In re Chacon*, 202 F.3d at 726. The Fifth Circuit, in its interpretation of section 1322(b)(1), held that the final clause of section 1322(b)(1) was an exception to the unfair discrimination test. The court applied the following test to co-debtor claims: "Differences in treatment are not discriminatory if they rationally further a legitimate interest of the debtor and do not disproportionately benefit the cosigner, e.g. by reimbursing interest where none is due or reimbursing more than the actual amount of the cosigned debt." *Id*.; *see also*, *Ramirez v. Bracher* (*In re Ramirez*), 204 F.3d 595, 596-601 (5th Cir. 2000) (Benavides, C.J., specially concurring).

  Judge Lynn, in *In re Simmons*, took the test pronounced in *Chacon* and tweaked it to apply it to the issue of unfair discrimination as opposed to preferences for co-debtor unsecured claims. *In re Simmons*, 288 B.R. at 751. As a result, the unfair discrimination test from *In re Simmons* is a two prong test. *Id*. "First, the discrimination must serve a rational, legitimate purpose of the debtor." *Id*. Second, "for discrimination to be fair, the amount to be received by the class discriminated against must not be less than the class would have been entitled to receive had there been no discrimination." *Id*. Elaborating upon the second prong of the unfair

discrimination test, the court stated that the second prong is satisfied if "the class discriminated against receives under the plan a return at least equal to what the class would have received if (a) there were no discrimination, and (b) 36 months of the debtor's disposable income were applied to make payments under the plan." *Id*. at 753. The court went on to state that if the debtor elects to make plan payments beyond the minimally required three years of the plan period, the specially designated claim may be preferred over the other unsecured claims. *Id*. at 753 n.55. Though this test is mostly mathematical in nature, Judge Lynn recognized that facts may exist that would allow discrimination even when the second prong is not satisfied. *Id*. at 751 n.50. Such situations would include "facts [that] demonstrate that a failure to discriminate[] would directly or indirectly impair the debtor's motive or ability to perform the plan." *Id*.

While the unfair discrimination test in *In re Simmons* is an objective test, it is not applicable in all situations, given the imposition of means testing required of debtors under the amendments to the Bankruptcy Code under the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA). The Code now prescribes two different "applicable commitment periods" for a chapter 13 debtor. § 1325(b)(4)(A). If the chapter 13 debtor is a below-the-median-income debtor, the "applicable commitment period" is three years. *Id*. The *Simmons* test may then still apply to determine unfair discrimination. If the chapter 13 debtor is an above-the-median-income debtor, the "applicable commitment period" is five years. *Id*. In such case, an example of which is the instant case, the *Simmons* test is inapplicable because the debtor must pay his projected disposable income for the full five years, and a plan cannot go longer than five years. §§ 1322(d); 1325(b)(4)(A). The debtor does not have the option of going

beyond the minimally required plan period as a way to accommodate the class that is discriminated against.

### 5. *Underlying Principles of these Tests*

Upon reviewing the many different cases that address the issue of whether a certain classification unfairly discriminates, two requirements emerge. First, the discrimination must have some rational basis. For example, courts have allowed debtors to classify student loan debt, *Simmons*, 288 B.R. at 752, criminal fines or penalties, *In re Gallipo*, 282 B.R. 917 (Bankr. E.D. Wash. 2002), and cosigned unsecured debt, *In re Chacon*, 202 F.3d at 726, because such debts are nondischargeable. Second, preferential treatment of a designated class must be fair. In determining fairness, the several different tests referenced above have been created. Courts have found that discrimination was fair when it allowed the debtor to complete the plan, *In re Gallipo*, 282 B.R. 917; where the difference between what unsecured creditors get under the discriminatory plan and what they would get under a nondiscriminatory plan is minimal, *In re Machado*, 378 B.R. 14 (Bankr. D. Mass. 2007); if other Code provisions allow the discrimination, in particular § 1322(b)(5), *In re Webb*, 370 B.R. 418 (Bankr. N.D. Ga. 2007); and when the debtor pays more than what is required under the Code, *Simmons*, 288 B.R. at 756-57. In short, there is great discretion left to the bankruptcy court to determine whether the discrimination is fair. *In re Pora*, 353 B.R. 247, 252 (Bankr. N.D. Cal. 2006). The burden lies with "the debtor to show that the proposed classification does not unfairly discriminate against other unsecured creditors." *Id*.

### B. *Cases Addressing Unfair Discrimination*

In *In re Gallipo*, the debtor designated three classes of unsecured creditors: 1) criminal traffic fines, 2) criminal shoplifting fines, and 3) remaining unsecured creditors. *In Gallipo*, 282

B.R. at 919. The plan proposed to pay the criminal traffic fines in full and the criminal shoplifting fines $158 towards the full claim. *Id*. The remaining unsecured creditors would receive nothing. *Id*. In determining whether the plan was confirmable and the discrimination fair, the *Gallipo* court used the *Wolff* test as described above. *Id*. at 920. In analyzing the plan and the different classes, the court found that the special classification of the traffic fines was fair because the debtor would not have been able to fulfill her plan. *Id*. 920-24. The court found that if the debtor did not pay-off the traffic fines, she would lose her driver's license which she needed in order to get to work. *Id*. at 920-921. The court found, however, that the separate class of shoplifting fines did not meet the *Wolff* test. *Id*. at 924. While the debtor stated that there was potential of incarceration for failure to pay the fines, the court found the threat of incarceration to be unrealistic. *Id*. at 920. The court reasoned that if incarceration really was a threat, the $158 paid through the plan would not eliminate the threat. *Id*. In the end, because of the special classification of the shoplifting fines, the court denied confirmation of the debtor's plan because it unfairly discriminated against the other unsecured creditors. *Id*. at 924.

*In re Machado* held that a plan that specially classified student loan debt was not unfairly discriminatory. *In re Machado*, 378 B.R. at 18. The debtor in *Machado* sought confirmation of a plan that classified student loan debt and unsecured debt separately. *Id*. at 15-16. The payout to the general unsecured creditors was 4.14% under the plan, while the debtor proposed to pay the student loan creditor its contractual amount. *Id*. The amount paid to the student loan creditor under the plan did not pay in full the claim. *Id*. The court analyzed the propriety of the special classification by considering four different factors: 1) Congress's intent, by excepting student loan debt from discharge, to insure that student loan debt is repaid; 2) section

1322(b)(5)'s express allowance for debtors to cure and maintain debt in which final payment is due after the completion of the chapter 13 plan; 3) the differential in payment to unsecured creditors between the discriminatory plan and a nondiscriminatory plan; and 4) whether any creditor objected to confirmation of the debtor's plan. *Id*. at 17. Upon these factors, the court held that the plan, while it did discriminate, did so fairly. *Id*. The court held that Congress intended that debtors repay their student loan debts. *Id*. Section 1322(b)(5) specifically allows for the maintenance of monthly payments on debt that is not discharged, like student loan debt, upon completion of the plan. *Id*. The court found that if the plan did not discriminate, the unsecured creditors would receive a 6.76% dividend on their claims, which was not significantly more than the payout to unsecured creditors under the plan (4.14%). *Id*. And, finally, the court found that no creditors objected to the treatment of their claims under the plan. *Id*. The court held that the plan was fair. *Id*.

*In re Webb*, a case factually similar to *In re Machado*, also held that a plan that discriminated in favor of student loan creditors was fair. *In re Webb*, 370 B.R. at 426. In *Webb*, the court used the *Wolff* test to determine whether the plan unfairly discriminated. *Id*. at 423. Under each factor, the court found that the test was satisfied and that the plan did not unfairly discriminate. *Id*. at 423-24. The court also pointed out that Congress intended for student loan debt to be repaid by making it nondischargeable. *Id*. at 426. The court noted that the difference in payment to the unsecured creditors if the student loan debt was not classified would be .2% greater, which the court found to be negligible. *Id*.

In *In re Stella*, the bankruptcy court had to determine whether the classification of creditors holding NSF checks was appropriate under section 1322(b)(1). *In re Stella*, 2006 WL

2433443, at * 1.  The debtor proposed a plan which designated two creditors holding NSF checks to be paid in full while paying a 5% dividend to other general unsecured creditors.  *Id*.  In Idaho, knowingly writing worthless checks is a criminal action which could lead to fines and jail time.  *Id*.  The debtor argued that the potential to be incarcerated required the special treatment of these two creditors because, if incarcerated, the debtor could not fulfill his plan.  *Id*. at *2.  The court began its analysis by looking at the different tests.  *Id*.  It acknowledged that the *Wolff* test had been criticized and that the bankruptcy court in Idaho had created an eight factor test, the *Bird* test.  *Id*. at *3.  Instead of using or rejecting either of those tests, the court stated that the manner in which it would decide the case would be based on "competent evidence and cogent argument as to what is fair and reasonable in light of the purposes of chapter 13." *Id*. at *4.  The court went on to analyze cases that dealt specifically with the issue before it, meaning cases that addressed either the discriminatory treatment of creditors who held NSF checks or the discriminatory treatment of criminal fines (and thus potential incarceration of the debtor).  *Id*. at *5-6.  The court found that the evidence of the debtor's potential incarceration was minimal at best.  *Id*. at *6.  The court held that the plan was therefore fundamentally unfair.  *Id*. at *7.

In one of the more recent cases addressing unfair discrimination under section 1322(b)(1), a bankruptcy court found the plan treatment of student loans to be fair despite its discrimination based on the *Bentley* factors discussed above.  *In re Orawsky*, 387 B.R. 128 (Bankr. E.D. Pa. 2008).  In *Orawsky*, the debtor classified student loan debt separately from the debtor's other unsecured creditors.  *Id*. at 132.  The plan then proposed to make a payment of $217 directly to the student loan creditor and a payment of $100 to the trustee to pay the administrative expenses and a *pro rata* distribution to the other unsecured creditors over a sixty month period.  *Id*. at 134.

The court analyzed existing case law regarding unfair discrimination. *Id*. at 140-48. Of these different cases, the court adopted the *Bentley* test to determine whether the plan was unfairly discriminatory. *Id*. at 148. Finding that the plan was fair, the court stated that the debtor's plan was completely voluntary because the debtor's projected disposable income was $0.00. *Id*. at 155-56. The court also found that the debtor did not have to make any payments to the unsecured creditors. *Id*. Furthermore, the court found that the debtor was not proposing to pay-off the student loan creditor in the plan, but was only paying the contractual amount as allowed by Congress under section 1322(b)(5). *Id*. at 156. The court, therefore, found that the plan was fair. *Id*.

### C. Analysis and Disposition of Instant Case

In assessing the debtors' plan here and whether the Court should allow the special classification and preferential treatment of the claims of Hancock and HSB, the Court turns first to the statute. The Code allows a chapter 13 plan to designate *classes* of unsecured creditors, provided that claims of creditors within a specific class are "substantially similar." §§ 1322(b)(1) and 1122(a). Then, the Code provides that the plan's classification scheme must not "discriminate unfairly" against a designated class. § 1322(b)(1).

The plan here designates two classes of unsecured creditors -- Hancock and HSB in one class and all other unsecured creditors in another class. According to the explanation provided by debtors' counsel, the claims of Hancock and HSB may subject the debtors to additional measures -- contempt on Hancock's claim (which has also been declared to be a nondischargeable claim) and potential criminal charges on HSB's claim. Assuming that these are, indeed, more than idle threats (and that evidence had been provided to establish the debtors'

concerns are legitimate), such claims are substantially similar and distinguishable from the claims of other unsecured creditors. The problem here, however, concerns whether the plan "unfairly discriminates" against a designated class, i.e., the other unsecured creditors. The Court agrees with the Bankruptcy Appellate Panel in *In re Bentley* which held that in determining the fairness of a plan, the court must not limit itself to assessing whether the plan rationally furthers a legitimate interest of the debtor; rather, the court must consider the interests of all affected parties -- typically the debtor, the class preferred, and the class discriminated against. *In re Bentley*, 266 B.R. at 239.

The debtors have not contended that either Hancock or HSB are accorded priority or preferential treatment under any provision of the Bankruptcy Code. Thus, paying them in full while paying nothing to other unsecured creditors violates the Code's requirement that unsecured creditors be treated equally (or, on a pro rata basis from limited funds). *See id.* at 240. The Court cannot discern that the debtors are sacrificing in any real and meaningful manner; they are retaining a $142,000 home and a 2003 automobile. The debtors have not contended that their plan payment exceeds the minimum that would be required under the Bankruptcy Code. The plan payment represents the net amount available from their income and expenses set forth in their Schedules I and J.

The plan, if approved and successfully completed, would provide the debtors with the best fresh start possible under the circumstances. Regardless, while a fresh start is an important consideration, the Code anticipates that debtors might not exit bankruptcy free of all pre-petition debts. *See In re Bentley*, 266 B.R. at 242. The debtors' alleged wrongdoing is the ultimate justification for allowing discrimination here. And the net effect is that the other unsecured

creditors pay the price. The fresh start provided by the Code is not an absolute. *Id*. Finally, there is simply no evidence before the Court that the underlying nature of the claims of either Hancock or HSB can or will result in further contempt or criminal proceedings against the debtors. Even assuming such a risk, it does not override the unfairness of the overwhelmingly disparate treatment proposed to similarly situated creditors. The Court has cataloged, at least in part, the jurisprudence on the issue of unfair discrimination in the context of special classification and preferential treatment of creditors. In doing so, the Court finds no authority to support the discrimination that is proposed here. The full payment to two unsecured creditors while others receive nothing is patently unfair. The Court will deny confirmation of the debtors' plan.

### End of Memorandum Opinion ###